Mary Jo O'Neill, AZ Bar #005924
Michael Baskind, AZ Bar #030810
James Driscoll-MacEachron, AZ Bar #027828
**Equal Employment Opportunity Commission, Phoenix District Office**
3300 N. Central Ave., Suite 690
Telephone: (602) 640-5003
Fax: (602) 640-5009
Email: mary.oneill@eeoc.gov
　　　michael.baskind@eeoc.gov
　　　james.driscollmaceachron@eeoc.gov

Attorneys for Plaintiff

Mark W. Robertson (N.Y. S.B. # 4508248)
Kelly Wood (C.A. S.B. # 267518)
**O'Melveny & Myers LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 430-6000
Fax:  (213) 430-6407
Email: mrobertson@omm.com
　　　kwood@omm.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>American Airlines, Inc. and Envoy Air Inc.,<br>　　　　　　　Defendants. | Civil Action No.: 2:17-cv-04059-SPL<br><br>**JOINT MEMORANDUM REGARDING CONSENT DECREE** |

## I. INTRODUCTION

Pursuant to this Court's November 8, 2017 Order (Docket No. 5), American Airlines, Inc. ("American"), Envoy Air Inc. ("Envoy") (collectively, "Defendants"), and the US Equal Employment Opportunity Commission ("EEOC") submit this joint memorandum addressing why the proposed Consent Decree (Docket No. 4-1) (the "Decree") represents a fair, adequate, and reasonable resolution of the claims set forth in the Complaint (Docket No. 1).

In determining whether a Consent Decree is "fundamentally fair, adequate and reasonable," the Court "must evaluate both the procedural and substantive fairness of the consent decree." *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1024 (N.D. Cal. 2011) (citing *United States v. Chevron*, 380 F.Supp.2d 1104, 1110–11 (N.D.Cal.2005). As set forth below, both are readily satisfied here.

If the decree was the product of "good faith, arms-length negotiations," it is "presumptively valid." *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). Here, since December 2015, the EEOC and Defendants have engaged in extensive settlement negotiations, with each party zealously advocating its position through experienced counsel. After attempting to negotiate a settlement, the Parties voluntarily attended formal mediation in Arizona in July 2016. Despite the assistance of a seasoned mediator, the Parties were unable to reach an agreement, but continued to negotiate over the following 16 months. In November 2017, after an exhaustive negotiation process, the Parties were finally able to agree upon a resolution and execute an agreement. Based on the case law, these negotiations, which included in-person meetings, formal mediation, and nearly two years of arms-length negotiations, conclusively establish the procedural fairness of the Decree.

With respect to substantive fairness of a consent decree, the court does not determine whether "the settlement is one which the court itself might have fashioned, or considers ideal." *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir.1990).) Rather, the court need only

JOINT MEMORANDUM
REGARDING CONSENT DECREE

1 determine that "the decree represents a reasonable factual and legal determination." *Id*.
2 Here, the Decree provides for injunctive relief, as well as monetary relief of $9.8 million
3 in American Airlines Group Inc. stock ("AAL stock"), which at its current stock price (as
4 of the close of business yesterday) is valued at nearly $14 million.  After extensive
5 negotiations, the Parties agreed on criteria for identifying the potentially aggrieved
6 individuals, and Defendants estimate that approximately 1,500 of their current and former
7 employees are potential claimants and may be eligible for a settlement distribution in
8 connection with the Decree.

9 The provisions of the Decree take into account not only the number of potentially
10 aggrieved individuals and the EEOC's allegations, but also the considerable strength of
11 Defendants' potential defenses, and the fact that Defendants had already revised the
12 relevant practices and policies before the Parties' negotiations began.  Considering the
13 Defendants' defenses, the litigation process which could take years to complete, and the
14 fact that trial could result in no relief at all, the Parties respectfully submit that the Decree
15 represents a more than fair and reasonable resolution to the EEOC's claims, and
16 accordingly, request that it be approved by this Court.

17 **II.    THE DECREE IS FAIR, ADEQUATE, AND REASONABLE**

18 A court reviews a consent decree to determine whether it is "fundamentally fair,
19 adequate and reasonable," and approval is within the discretion of the Court.  *Oregon*, 913
20 F.2d 576, 580 (9th Cir.1990).  In "reviewing a consent decree, the district court pays
21 deference to the expertise of the agency and the policy encouraging settlement." *Equal*
22 *Employment Opportunity Comm'n v. Mach Mining, LLC*, No. 11-cv-00879-JPG-RJD, No.
23 16-cv-01306-JPG-RJD, 2017 WL 365636, at *1 (S.D. Ill. Jan. 25, 2017)  (citing *United*
24 *States v. George A. Whiting Paper Co*., 644 F.3d 368, 372 (7th Cir. 2011).  "As such, a
25 presumption in favor of approving the consent decree arises." *Donovan v. Robbins*, 752
26 F.2d 1170, 1177 (7th Cir. 1985).  "Accordingly, this Court 'must approve a consent
27 decree if it is reasonable, consistent with the agency's goals, and substantively and
28

- 2 -

JOINT MEMORANDUM
REGARDING CONSENT DECREE

procedurally fair.'" *Mach Mining,* 2017 WL 365636, at *1 (citing *George A. Whiting Paper Co.*, 644 F.3d at 372.)  Such is the case here.

### A. The Decree Is Procedurally Fair.

When assessing a consent decree, "[c]ourts typically first examine procedural fairness, and make a determination as to whether the negotiation process was 'fair and full of adversarial vigor.'" *Chevron U.S.A., Inc.*, 380 F. Supp. 2d at 1111 (citing *United States v. Telluride Co.*, 849 F.Supp. 1400, 1402 (D. Colo. 1994).)  If the decree was the product of "good faith, arms-length negotiations," it is "presumptively valid." *Oregon*, 913 F.2d at 581.

In or around 2009, the EEOC began investigating Defendants' Americans with Disabilities Act ("ADA") policies and procedures in response to charges of discrimination (the "Charges") filed by 13 current and former employees of Defendants (the "Charging Parties").  After requesting documents and interviewing Defendants' employees, the EEOC issued 13 determination letters in 2015 in response to the Charges ("Determination Letters"), finding that there was "reasonable cause to believe" that certain of Defendants' policies and practices were not compliant with the ADA, including those related to job applications, hiring, transfers, promotions, and reasonable accommodations, including Defendants' alleged practice of refusing to allow employees to return to work unless they are 100% healed or without medical restrictions, and requiring employees to compete for reassignment.

The EEOC invited Defendants to conciliation, and, after a face-to-face meeting and substantive discussions, the Parties agreed to attend a formal mediation proceeding.  In advance of the mediation, the Parties submitted comprehensive briefing to the mediator, setting forth their respective positions.  The EEOC identified the policies and practices of Defendants the agency found to be problematic, including Defendants' alleged practice of refusing to return employees to work with medical restrictions, and requiring employees seeking reassignment to compete for such positions.  In turn, Defendants explained the significant complexities and safety-related concerns involved in operating an airline,

JOINT MEMORANDUM
REGARDING CONSENT DECREE

1  including the inherent difficulties of identifying reasonable accommodations for physical
2  and mental disabilities in a physically-demanding and highly-regulated industry, where
3  the vast majority of employees' terms and conditions of employment are governed by
4  collective bargaining agreements.  Defendants also explained that many claimants were
5  not qualified for their positions and that there were no available reasonable
6  accommodations, including suitable positions for reassignment.

7  On July 18, 2016, the EEOC provided Defendants with the first draft of the Decree,
8  and on July 19, 2016, the Parties attended a mediation in Phoenix, Arizona with an
9  accomplished mediator.  Despite the Parties and the mediator's best efforts, the Parties
10 were unable to reach a resolution.  Over the following 16 months, the Parties continued to
11 negotiate the terms of the Decree, which included numerous exchanges of proposed
12 language and lengthy discussions between counsel, as well as additional in-person
13 meetings, including a meeting at the EEOC's office in Washington DC with the Parties
14 and their counsel.  The Decree was eventually finalized and executed by all Parties in
15 early November 2017.

16 These extensive negotiations were done in good faith, at arms-length, and readily
17 establish the procedural fairness of the Decree.  *See Chevron U.S.A., Inc*., 380 F. Supp. 2d
18 at 1112 (approving consent decree based on months of negotiations leading up to the
19 lodging of the Consent Decree with the Court); *Mach Mining, LLC*, 2017 WL 365636, at
20 *1 (approving consent decree and holding that "all parties [were] represented by
21 experienced counsel, and there is nothing suggesting this consent decree was reached
22 through anything but a procedurally fair negotiation process"); *Turtle Island Restoration*
23 *Network v. U.S. Dep't of Commerce*, 834 F. Supp. 2d 1004, 1017 (D. Haw. 2011), aff'd,
24 672 F.3d 1160 (9th Cir. 2012) (approving consent decree and holding that "[i]t is readily
25 apparent that the proposed consent decree is procedurally fair" when "[a]lthough the terms
26 of the proposed consent decree [were] relatively straightforward, the parties nevertheless
27 engaged in more than three months of negotiations").

28

### B.     The Decree Is Substantively Fair.

After analyzing the procedural fairness of a consent decree, "courts examine the substantive fairness of the proposal." *Turtle Island*, 834 F. Supp. 2d at 1017. "A consent decree is substantively fair if it involves 'corrective justice and accountability.'" *Mach Mining, LLC*, 2017 WL 365636 at *2 . "Procedural fairness is relevant to the inquiry [of substantive fairness] because, to the extent that the process was fair and full of adversarial vigor, the results come before the court with a much greater assurance of substantive fairness." *Id.* at *2 (internal citation omitted) (internal quotations omitted).

With respect to substantive fairness, the Court does not determine whether "the settlement is one which the court itself might have fashioned, or considers ideal." *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1024–25 (citing *Cannons*, 899 F.2d at 84. "Instead, the 'court's approval is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citing *Oregon*, 913 F.2d at 581 (internal quotations omitted). "The court need only be satisfied that the decree represents a reasonable factual and legal determination." *Id*. (internal quotations omitted).

Here, the Decree imposes substantial monetary and non-monetary relief.  As to monetary relief, the Decree provides for $9,800,000.00 in AAL stock to be provided to the settlement administrator for distribution to the Charging Parties and eligible claimants. (Docket No. 4-1, ¶ 17.)  Because the value of the AAL stock was set at the time of the American's bankruptcy, when the settlement administrator ultimately converts the stock to cash, the value of the settlement will be based on the current value of AAL stock.  As of close of business on Monday, November 13, 2017, the cash value of the settlement amount to be distributed to the Charging Parties and potential eligible claimants is $13,786,125.00.[1]  The final settlement amount at the time of conversion will be distributed amongst the 13 Charging Parties and the potential group of 1,500 eligible claimants as detailed in Paragraph 22 of the Decree (the actual number of claimants who receive a settlement could be higher or lower).  (Docket No. 4-1, ¶ 22.)  To the extent any

---

[1] The value could be higher or lower at the time of conversion.

JOINT MEMORANDUM
REGARDING CONSENT DECREE

1 portion of the final settlement amount is not distributed to the eligible claimants and
2 Charging Parties, any remaining amounts will be donated to one or more charities and/or
3 non-profit organizations mutually agreed to by the Parties.  (*Id.*, ¶ 22.q.)
4     In addition to the monetary relief, the Decree affords non-monetary relief as well.
5 For example, the Decree requires Defendants to (1) post a notice in each station in which
6 Defendants operate, and provide the same notice to newly-hired employees for the
7 duration of the Decree, informing employees of their rights under the ADA (*id.* ¶ 28); (2)
8 make available computer-based training to employees and provide annual live training to
9 Human Resources employees who assist with the accommodation process regarding the
10 provisions of the Decree and employee rights under the ADA (*id.* ¶ 29); (3) appoint an
11 ADA Coordinator who shall be responsible for assisting human resource, supervisory, and
12 managerial employees with ADA compliance and compliance with the Decree, as well as
13 reviewing certain accommodation decisions (*id.* ¶¶ 31-32); (4) to the extent not already
14 accomplished, adopt policies and practices that are compliant with the ADA and provide
15 for reasonable accommodations to qualified individuals with disabilities (*id.* ¶ 34); (5)
16 revise their job descriptions to accurately reflect essential and marginal job functions, and
17 to state that reasonable accommodations may be made for qualifying individuals with
18 disabilities (*id.* ¶ 35) ; and (6) provide the EEOC with records evidencing employee
19 requests for reasonable accommodations, as well as the results of those requests for the
20 duration of the Decree (*id.* ¶ 38).
21     Courts have repeatedly found consent decrees to be substantively fair in similar
22 circumstances, and the result should be the same here.  *See Mach Mining, LLC*, 2017 WL
23 365636, at *2 ("The Court finds the instant consent decree substantively fair because it
24 obtains a significant civil penalty for the alleged noncompliance and requires the
25 defendants to comply with EEOC regulations and an injunctive protocol on future hiring.
26 The Court has no reason to believe the process was substantively unfair."); *EEOC v. Ins.*
27 *Car Rentals, Inc.*, No. 98 CV 8261, 2000 WL 1375589, at *1 (N.D. Ill. July 13, 2000)
28 (finding that "[t]he terms of this Decree are adequate, fair, reasonable, equitable, and just"

1 when defendants were required to provide monetary relief, post a notice in its facilities,
2 provide records to the EEOC, and were enjoined from engaging in discriminatory
3 practices); *E.E.O.C. v. Renhill Grp. Inc.*, No. 1:08-CV-82-TS, 2009 WL 1605159, at *7
4 (N.D. Ind. June 5, 2009) ("taking into account the consideration set forth in the Consent
5 Decree, the possible defenses that could be asserted by [defendant], and the risks of
6 further litigation, the Consent Decree is lawful, fair, reasonable, and adequate").

7 That the relief obtained by the EEOC is fair, reasonable and adequate is further
8 confirmed by the fact that Defendants have strong defenses to the EEOC's claims.[2] *See*
9 *id.* By way of example only, Defendants have a heavily unionized workforce in which the
10 terms and conditions of employment are determined by an employee's seniority.  And it is
11 well-established that "the ADA does not require an employer to take action inconsistent
12 with the contractual rights of other workers under a collective bargaining agreement."
13 *Foreman v. The Babcock & Wilcox Company*, 117 F.3d 800, 810 (5th Cir. 1997) (citing
14 *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir. 1995)); *see also US Airways,*
15 *Inc. v. Barnett*, 535 U.S. 391, 405-06 (2002); *Eckles v. Consol. Rail Corp.*, 94 F.3d 1041,
16 1051 (7th Cir. 1996) ("After examining the text, background, and legislative history of the
17 ADA duty of 'reasonable accommodation,' we conclude that the ADA does not require
18 disabled individuals to be accommodated by sacrificing the collectively bargained, bona
19 fide seniority rights of other employees."), *cert. denied*, 520 U.S. 1146 (1997); *Milton v.*
20 *Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995) (recognizing plaintiffs' collective
21 bargaining agreement prohibited their transfer to any other job because plaintiffs lacked
22 requisite seniority).

23 Moreover, many of Defendants' decisions were based on safety-related concerns
24 for its employees that are unique to the airline industry.  An employer is not required to
25 maintain an employee in the workplace (and may terminate the employee) if the employee
26 poses a "direct threat to the health or safety of other individuals in the workplace," 42

---

[2] The EEOC does not concede the merits of any of Defendants' asserted defenses, but recognizes that the defenses could have been accepted by a jury for some claimants, in which case the individuals the EEOC believes to be aggrieved would recover nothing.

- 7 - JOINT MEMORANDUM REGARDING CONSENT DECREE

1  U.S.C. § 12113(b), and "no accommodation exists that would either eliminate or reduce
2  the risk."  App. to 29 C.F.R. § 1630.2(r).  Given the unique safety concerns that exist in
3  operating an airline, Defendants contend that many of their decisions with which the
4  EEOC took issue were entirely appropriate based on safety concerns.

5  The other reality is that there were—and are—significant challenges to providing
6  reasonable accommodations to employees in the airline industry's physically-demanding
7  positions.  The majority of Defendants' positions require employees to be able to lift and
8  maneuver a significant amount of weight on a continual basis and require repetitive
9  bending, stooping, and twisting throughout the day.  If an employee in those positions
10 could not lift and move heavy baggage, cargo, or aircraft components—the essential
11 functions of those positions—no accommodation would allow them to do so.  This is true
12 even if they work alongside employees who can lift the heavier items; "the law does not
13 require an employer to transfer from the disabled employee any of the essential functions
14 of his job."  *Barber v. Nabors Drilling U.S.A., Inc*., 130 F.3d 702, 709 (5th Cir. 1997).
15 "To have another employee perform a position's essential function, and to a certain extent
16 perform the job for the employee, is not a reasonable accommodation."  *Majors v. Gen.*
17 *Elec. Co*., 714 F.3d 527, 534 (7th Cir. 2013) (citing *Cochrum v. Old Ben Coal Co*., 102
18 F.3d 908, 912 (7th Cir. 1996) (employee's suggested accommodation of hiring a helper to
19 perform essential function of the job—the overhead work required by the position—was
20 not a reasonable accommodation)).

21 For these reasons, among others, if this matter were to be litigated, Defendants
22 believe they could establish that that they fulfilled their obligations under the ADA, thus
23 further confirming that the EEOC obtained a more than fair, adequate, and reasonable
24 resolution of its claims.

25 **III.   CONCLUSION**

26 For the foregoing reasons, the Parties submit that the Decree is a fair, adequate,
27 and reasonable resolution of this matter and respectfully request that this Court grant its
28 approval.

| | | |
|---|---|---|
| 1 | Respectfully submitted: | Date: November 14, 2017 |

__/s/ Mary Jo O'Neil (with permission)__   __/s/ Mark W. Robertson__
Mary Jo O'Neill                          O'Melveny & Myers LLP
Regional Attorney                        Mark W. Robertson
Michael Baskind                          Kelly Wood
Trial Attorney                           Times Square Tower
EEOC Phoenix District Office             7 Times Square
3300 N. Central Ave., Suite 690          New York, New York 10036
Phoenix, Arizona 85012                   Telephone: (212) 430-6000
Telephone: (602) 640-5003

                                         Attorneys for Defendants
Attorney for Plaintiff EEOC              American Airlines, Inc. and Envoy Air Inc.

JOINT MEMORANDUM
REGARDING CONSENT DECREE

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the email addresses denoted on the Electronic Mail Notice List.

                                                    /s/ Mark W. Robertson